■ GEORGE J. CODY et al., Respondents, v ANTHONY FABIANO AND SONS, INC., et al., Appellants. [667 NYS2d 446] —Carpinello, J. Appeal from an order of the Supreme Court (Cobb, J.), entered September 13, 1996 in Columbia County, which, *inter alia*, granted plaintiffs' motion for summary judgment and made a declaration in their favor.

Plaintiffs are the owners of seven lots in College Crest Estates, a residential development on approximately 33 acres in Columbia County. This subdivision, created in 1974, contains 41 lots, each of which is subject to a "DECLARATIONS OF COVENANTS, CONDITIONS AND RESTRICTIONS". This document expressly provides that any *sale* or *conveyance* of a lot within College Crest "shall be subject to certain covenants, conditions and restrictions", including the restrictions that all premises conveyed shall be used exclusively for residential purposes, that no business, trade and/or profession or calling of any kind can be maintained on the lots and that no noxious or offensive activity shall be carried on upon any lot, including any activity which may be or become an annoyance or nuisance to the neighborhood.

Defendants are in the business of gravel mining and operate mines near the development. They seek to expand their mining operations onto the 28 remaining undeveloped lots within the development, which were acquired in 1988 by defendant Anthony Fabiano and Sons, Inc. and later became the assets of defendant A. Colarusso and Sons, Inc. when the two corpora-

tions merged.* Plaintiffs commenced this action for a judgment declaring that defendants' proposed mining activities violate the restrictive covenants and seeking to enjoin them from engaging in such activity. Following plaintiffs' motion for summary judgment, defendants opposed and cross-moved for summary judgment contending that the restrictive covenants should be extinguished pursuant to RPAPL 1951. Supreme Court granted plaintiffs' motion and denied defendants' cross motion, prompting this appeal.

Defendants raise three primary arguments in support of reversal. The first—that their mining operations do not contravene the restrictive covenants—is patently frivolous and warrants little comment. Given the clear and unambiguous language of the restrictive covenants of which defendants had record notice when they acquired the property, commercial mining is precluded in the development and plaintiffs proved by clear and convincing evidence that they were entitled to summary judgment (*see, e.g., Korenman v Zaydelman*, 237 AD2d 711, 712-713; *Irish v Besten*, 158 AD2d 867, 868; *cf., Gitlen v Gallup*, 241 AD2d 856).

Also without merit is defendants' contention that they were entitled to extinguishment of the covenants pursuant to RPAPL 1951. "The issue in determining whether a restrictive covenant is unenforceable is not whether the party seeking the enforcement of the restriction obtains any benefit, but whether, in a balancing of equities, the restrictive covenant is of no actual and substantial benefit" (*Deak v Heathcote Assn.*, 191 AD2d 671, 672). Notably, defendants, as the parties claiming unenforceability of the restrictions, bear the burden of proving same (*see, id.; see also, Board of Educ. v Doe*, 88 AD2d 108, 118).

Defendants were required to prove a lack of benefit derived from the enforcement of the restrictive covenants, as well as a legally cognizable reason for their extinguishment under RPAPL 1951, such as changed conditions, which render their purpose incapable of being accomplished (*see, Orange & Rockland Utils. v Philwold Estates*, 52 NY2d 253, 264-266; *see also*, RPAPL 1951). This they failed to do. In support of their argument that the lots could not be developed for residential purposes and therefore the purpose of the restrictive covenants was incapable of being accomplished, defendants cited several factors—the development's narrow configuration, a Niagara Mohawk Power Corporation easement adjacent to and within the development, and the presence of defendants' mines near

---

* Defendant Kearney Gravel Company is a division of A. Colarusso and Sons, Inc.

the development. Each of these conditions, however, existed in 1974 and therefore do not constitute "changed conditions" rendering the purpose of the covenants incapable of being accomplished (cf., *Matter of Zimmerman v Seven Corners Dev.*, 237 AD2d 892).

Upon our review of the record, neither the development itself, which has remained residential in nature (see, *Gordon v Incorporated Vil. of Lawrence*, 84 AD2d 558, *affd* 56 NY2d 1003), nor its surrounding area (see, *Meadow Run Dev. Corp. v Atlantic Ref. & Mktg. Corp.*, 155 AD2d 752) has undergone any significant changes since 1974. And, while defendants claim that the property was never developed as intended and can no longer be developed residentially, it has not escaped this Court's attention that defendants themselves have owned the remaining lots since 1988 and acquired them with the intended purpose of mining as evidenced by their 1988 Department of Environmental Conservation application seeking permission to expand mining operations into the development. Defendants presented no evidence that they attempted to sell any of these lots for continued residential use during the near decade that they have owned them.

Even if defendants had established that the purpose of the covenants was incapable of being accomplished owing to changed circumstances, upon appropriate balance (see, *Orange & Rockland Utils. v Philwold Estates*, supra, at 266), the equities in no way tip in their favor justifying extinguishment of the covenants. When defendants acquired the property, they were not only on notice of the restrictive covenants, they were also on notice of the development's configuration, the power company easement and their own surrounding mining operations; any hardship on their part was therefore self-created (see, *Deak v Heathcote Assn.*, supra, at 673). Additionally, defendants took a chance by expending efforts and funds to obtain Department of Environmental Conservation approval to mine on the property *before* attempting to extinguish the restrictive covenants. These efforts and expenditures were also self-created hardships and as such do not warrant extinguishment of the restrictive covenants. Plaintiffs, on the other hand, established that permitting mining activities within the development would have serious adverse impacts on their property values and quality of life.

Finally, we are unconvinced that summary judgment was premature because certain discovery demands are still outstanding. Defendants have failed to demonstrate how further discovery might reveal the existence of material facts

within plaintiffs' exclusive knowledge with respect to the market value of their respective properties (*see, Welsh v County of Albany*, 235 AD2d 820). To the extent that defendants seek information from plaintiffs to support their defense that plaintiffs "may" be collaterally estopped from enforcing the restrictive covenants because they "may" have violated the covenants themselves, we note that summary judgment should not be deemed premature when hopeful defendants are attempting to utilize the discovery process as a fishing expedition in an attempt to disclose evidence that will prove their case (*see, Aminov v East 50th St. Rest. Corp.*, 232 AD2d 592, 593, *lv denied* 89 NY2d 815; *Ramesar v State of New York*, 224 AD2d 757, *lv denied* 88 NY2d 811).

Mikoll, J. P., Yesawich Jr., Peters and Spain, JJ., concur. Ordered that the order is affirmed, with costs.